Before we begin our regular proceedings, I'd like to turn to Judge Lurie, who has the motion. Thank you, Chief. I move the admission of Benjamin Aaron Sedman, who is a member of the Bar and is in good standing with the highest court of Georgia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I would like to go beyond the formal requirements of the motion and say that Ben has been with me for almost two years. He has done fine work and he's been diligent, thorough, insightful, and enjoyable to work with. And we've had lots of enjoyable conversations beyond the law on cases, including the relative merits of Washington and Atlanta sports teams. I have no doubt that he will have a successful career and will be with me for a couple of more months happily. Today, when he's left, I will look back fondly on his clerkship and I wish him well and move his admission to our Bar. I'm happy to join Judge Lurie's motion and to welcome you to the Bar of the Court. As am I. Please. Our first case this morning is 15-1056, Orenstein v. Syntrax Systems. Mr. Fink, whenever you're ready. Good morning. I'd like to address some questions that have never been asked and I'm going to pose the questions and hopefully provide an answer. In the red brief at page two, there is a list of things that are recorded from the Orenstein's deposition. And briefly, Mr. Orenstein testified he knew nothing about Syntrax-accused products and in fact could not even name a single product. He had no basis to believe that the Syntrax-accused products infringed the patents in suit. As alleged in his complaint, he had conducted no investigation to determine whether Syntrax-accused products infringed the patents in suit. He had never discussed Syntrax and its accused products with his counsel, Fink and Johnson, before the filing. He had never requested or received any opinion from his counsel, Fink and Johnson, regarding whether Syntrax-accused products infringed the patents in suit and he had authorized the filing of this suit without knowing whether Syntrax infringed the patents in suit. Clearly, I did speak to Mr. Orenstein and the court followed this and was disturbed that I had not told Mr. Orenstein, wait a minute, I did talk to you, but you might want to know what was in my head. This is not an excuse, but what was in my head? And I'll tell you what was in my head. He knew nothing because I never told him anything. That's why he didn't know what the accused products were, why he didn't know about the investigation, why he had no knowledge of what was going on. Mr. Fink, when was the first time that Syntrax learned that a pre-filing investigation had been conducted in this case? Probably at the deposition. My understanding is that they did not learn that a pre-filing investigation had been done until your declaration was filed in response to the motion for summary judgment. Yes, that's correct. But prior to that time, why Ms. Syntrax had to engage in a number of activities simply in an effort to learn whether any pre-filing investigation had been done. They first sought that information from Mr. Orenstein, then getting no answer from him, they sought your deposition, Mr. Johnson's deposition, then there was the motion for protective order, etc., etc. So quite a bit of activity took place before they were able to get an answer, a simple answer, that yes, a pre-filing investigation had been done. And isn't that the problem that resulted in this sanction? Well, if I may, the final judgment, which is in the docket, was on May 20, 2003. Immediately following that, Syntrax filed a whole bunch of motions, and after the notice of appeal was filed, that's at docket 180, Syntrax filed a motion for sanctions. This is after the case was over. So it did not move the case or cause any problems, because the case was over. Then... What didn't cause any problems? The fact that they filed it once, but didn't say the case was over? There was no vexation if the case was over. The case was over on May 20, 2003. They didn't file... But Mr. Pink, they filed that motion after the case was over, but they filed a motion claiming that the proceedings were unduly multiplied, specifically the proceedings that I just referred to prior to the declarations filed in response to the motion for summary judgment. But all the activities that's in the Red Book that they argued and that they wanted a bill for occurred after the case was over. They complained, for example, that they wanted to depose Johnson and May, and we filed for protective order. But that's been beforehand, right? That happened afterwards. The case was closed, and the notice of appeal had been filed. So they argued... No, no, wait a second. The motion for protective order was filed earlier, before the motion for summary judgment, right? They wanted... Excuse me, Your Honor. But they wanted to depose Johnson and May. And that occurred early in the case? We resisted that. We filed for protective order. Right. And that did not occur after the case was decided. That occurred early in the case. The actual deposition occurred on April 21, 2004. The case was over in May 2003. The notice of appeal had been filed already. So this activity... And the interesting result was they were hunting for information to prove that Orenstein knew all about the case and didn't know about it, and didn't testify. Orenstein knew nothing. And so I want to mention to you, why did Orenstein know nothing? And the answer is very simple. I work on a contingency basis. And yes, I'm an attorney, but I have to be a little bit of a psychologist and I have to understand my client and what I can talk to them about. I appreciate what you're saying. Is this part of the record already? Or is this... I mean, was this in your deposition? I mean, is what you're conveying to us something that's already in the record? No, it's not in the record. And I thought I'd tell you something that might interest you. That's not... It's not my defense. But that... It's well established that Orenstein knew nothing. He didn't know anything about anything. Okay? And I thought it might interest you to know why is it he knew nothing about the case? But as implied by Judge Prost's question, we're reviewing that case for an abuse of discretion based on the record. Not hearing new equitable evidence. Right. I just thought it might be interesting to mention. But the fact is that the case was over. They filed for sanctions. And then there was a lot of activity. They filed motions. They wanted to depose us. We resisted that. They deposed us. They didn't come up with anything. When we... We filed our argument. We gave an infringement chart. And we cited... And cited to... What they... The manuals that they had. Obviously, we knew about it. The fact that the case was over and they were anxious to find out what exactly we knew and how we knew and when we knew didn't cause the case... Wasn't vexation. They were just curious. They were hunting for information to establish that Orenstein knew all about the case and he wouldn't tell them. And he lied all about it. And he didn't. He knew nothing about it. He did say he didn't talk to me. And I was wrong not to correct that. He did talk to me. We talked about sports. We talked about politics. I did not talk about the case and what we were doing. That's why you were sanctioned? I'd say, yeah. That's why you were sanctioned? Actually, that's one of the reasons I was sanctioned. But when the case came to this the first time, this court said... Of the three reasons given by the court for sanction, they said... Well, you said... First of all, Citrix misled the court because it appeared that Orenstein testified that the controller was what they said it was but they left out part of the transcript. So they were wrong there. The second reason, this court said... Second, the court found that Fink and Johnson had minimal contact with Orenstein during the pre-filing investigation. Lastly, the court was disturbed by the fact that neither Fink nor Johnson corrected the apparent inconsistencies between Orenstein's deposition and his testimony at a hearing regarding Orenstein's conversation with counsel. The court went on to say... We do not... This was the first time we were on here. Furthermore, we do not see why Fink and Johnson should be sanctioned for their minimal contact with Orenstein during the pre-filing investigation. Both Fink and Johnson have scientific backgrounds that suggest that they are at least competent in conducting an investigation of this sort and the district court never truly challenged their ability. In addition, there is some advantage in attorneys making their own independent evaluation of a patent infringement issue free from any inherent bias of the offenders. In any event, we find no authority that requires attorneys to consult with patentees during the pre-filing investigation although it would seem to be prudent, highly desirable, and the usual practice. Indeed, much of the district court's dim view of Fink and Johnson's conduct may be attributable to the court's erroneous interpretation of Orenstein's own view of the correct claim construction of his patent. So is it your view that our earlier opinion somehow precluded the finding of sanctions on Omniman? Well, in terms of sanctions, if, as I understand, sanctions are to discourage certain bad conduct, Citrix has represented in their initial filing that they spent $330,000 plus $30,000 in expenses to find out that Orenstein knew nothing. And the present district judge refused to allow the $30,000 because it wasn't properly they weren't convinced it was properly documented. And the $30,000 was simply reduced to about $200,000. You're well into your rebuttal. You're well into your rebuttal time, sir. So do you want to save that? Okay, I won't save the rest of it. Thank you very much. I appreciate it. Mr. Russo? Good morning, Your Honors. May it please the Court. My name is Tim Russo from Goodwin-Proctor. I'm here on behalf of Dependent Appellee, Citrix Systems. I would like to address three issues this morning. All three are factual issues. Factual issues are the only issues that have been raised by the appellees on appeal. Under the abuse of discretion standard, factual issues are reviewed for clear error. The first is the district court's factual filing. Can I just ask you, what would have happened in your view is that what should have happened is that Orenstein should have said yes rather than no in the initial, in the deposition we're talking about, right? That's correct. It was more than one answer, but yes. What would have happened then if he had said yes in terms of additional discovery or whatever? What would have been done differently than was actually done? Certainly. Well, Citrix would have at least then knew that a pre-filing investigation had been done and a Rule 11 motion would not have been necessitated. Certain other motions in Limine, for example, were conducted as a result of the false testimony. This all relates to the proceedings that were multiplied. You certainly would have then attempted to depose Mr. Fink and Mr. Johnson just as you did, correct? That's likely correct, yes. We would have attempted to learn the information from the suit. Probably run up against the same motion for protective order, etc., etc. Perhaps. The District Court did find as a factual matter that because Mr. Orenstein had said that no pre-filing investigation had been done, or at least that he knew of none, that these were all proceedings that were caused by that. Perhaps if Mr. Orenstein had testified to his knowledge, he would have been able to testify further regarding the pre-filing investigations that he was aware of. It would have gone certainly beyond the simple no or yes answer if he had testified truthfully. The District Court found as a factual matter that counsel below acted unreasonably and vexatiously, finding that their failure to correct their client's false testimony was tantamount to bad faith. The District Court also found correctly as a factual matter that that conduct multiplied the proceedings, as we just discussed, and also that the magistrate judge's finding of the amount of sanctions that were awarded, the magistrate judge carefully tailored that amount to the proceedings that were found to have been multiplied. Yes, but it was kind of a rough justice, right? I mean, just kind of cutting it down by a certain percentage just because attorneys will feel that that was the right number, right? The magistrate judge reduced the amount of sanctions, the amount of attorney's fees sought by Citrix by one-third. After careful review of the billing records that Citrix submitted, this follows 11th Circuit precedent that explicitly permits that type of review. Okay. With respect to the unreasonable and vexatious conduct, the District Court correctly found that the conduct was tantamount to bad faith, which is the standard in the 11th Circuit, and in determining that, this is an objective, not a subjective review. This conduct did relate directly to proceedings that were relevant to the case. This was all part of Citrix's efforts to understand the basis for why the suit was filed against them. This was back in 2002, 2003, before local patent rules were common, before routine exchange of infringement condenses were common. At this point in the case, Citrix had no idea why its products were being accused, what the theory of infringement was. And Ornstein had identified only himself as person having relevant knowledge regarding that, so Citrix naturally, at his deposition, sought that information from him. We were rebuffed with a false answer, and as a result, we were forced to spend time and money and effort on additional proceedings to discover the basis for the suit. We were forced to continue proceedings once it was revealed that the testimony was false into the false testimony itself regarding a Rule 11 motion which was premised on the fact that the testimony was in fact true, which later turned out to be false. And continuing today into the sanctions proceedings that we're currently dealing with. The District Court correctly found as a factual matter that all of this had a nexus to the false testimony. In connection with the amount of sanctions assessed, the 11th Circuit has said even where the billing records submitted are not perfect or are inadequate, the District Court must still award a reasonable fee. The magistrate judge spent considerable effort in reviewing the records submitted by Citrix and determined that they should be reduced by one-third and that was based on the fact that Citrix had sought fees for four certain categories of activities that they had conducted and the magistrate found that only two of those were actually within the multiplied proceedings as well as part of a third of the category. Certain motions were also relevant. Is this the last thing pending in this case? This is. Below counsel did not object to any specific line items so the District Court had no basis to reduce particular line items because counsel failed to identify any specific line items that were not relevant to the sanctioned conduct. Unless the Court has any other questions I'm prepared to see. Thank you. To a great extent the initial District Court was disturbed by what appeared to be an agreement by Ornstein that Citrix's definition for the controller was correct. In fact, it turned out that, as I mentioned earlier, that this was a dominant factor in the District Court's initial decision for rule 11 and sanctions because it appeared that the case was brought with no reasonable basis. However, this Court commented in the previous decision, however, Ornstein's position on the claims instruction of the controller was far from frivolous or unreasonable and thus did not vexatiously multiply the proceedings, which the District Court had thought. My colleague here said, I don't know if he meant to say it, but he said that Ornstein said there was no pre-filing investigation. He didn't say that. He never said that. He said he didn't do it because he didn't know what was going on. I think that to ask for $200,000 for a failed attempt to discover that Ornstein lied outrageously at a deposition is unreasonable and I hope that you see it that way. Thank you. We thank both counsel and the case is submitted and that concludes our proceedings for this morning. All rise. The Honorable Court is adjourned from day to day. Thank you.